UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:08CV-188-R

MARK TUNNE                                                        PLAINTIFF

v.

PADUCAH POLICE DEPT. *et al.*                                    DEFENDANTS

<u>**MEMORANDUM OPINION**</u>

This matter is currently before the Court for screening of the complaint (DN 1) and

amended complaint (DN 10)[1] pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*,

114 F.3d 601 (6th Cir. 1997).  For the reasons that follow, a portion of the complaint will be

dismissed and a portion will proceed.

**I.  <u>SUMMARY OF CLAIMS</u>**

Plaintiff filed a complaint using a court-approved complaint form.  As Defendants in the

caption of the complaint form, he lists Paducah Police Dept. (PPD); City of Paducah;

McCracken County Prosecutor; and the Commonwealth of Kentucky.  In attachments to the

complaint form, he indicates that he also intends to sue Paducah Police Officer Tim Reed and the

Paducah Commonwealth's Attorney's Office.  Additionally, in the amended complaint, he

names, as Defendants, the United States Postal Service/Paducah Annex (USPS); Beth Cluck and

Russell McCuiston, USPS employees; and Andrew Zeman, a U.S. Postal Inspector.

In the complaint form, as grounds for filing this case in federal court, Plaintiff lists 42

U.S.C. § 1983; 42 U.S.C. § 1985; Fourth Amendment; Federal Tort Claims Act; and *Bivens v.*

*Six Unknown Agents*.  In attachments to the complaint, he also alleges state-law claims of slander

---

[1] The amended complaint is identical to the amended complaint filed in Civil Action
5:08CV-189-R, another case filed by Plaintiff involving the same facts.

*per se* and negligence *per se* under Ky. Rev. Stat. § 446.070.  In the amended complaint, he raises thirteen claims against Defendants:  (1) violations of 42 U.S.C. §§ 1983, 1985, and 1986; (2) violations of the Fourth and Fourteenth Amendments; (3) vicarious liability; (4) respondeat superior liability; (5) false arrest; (6) false imprisonment; (7) abuse of process; (8) malicious prosecution; (9) negligence; (10) negligence *per se*; (11) intentional infliction of emotional distress; (12) negligent infliction of emotional distress; and (13) violation of Title 36–Parks, Forests, and Public Property.

In the statement-of-claim portion of the original complaint form, Plaintiff writes, "See Attachments."  The "Attachments" to which Plaintiff refers are (1) a July 15, 2008, eleven-page letter addressed to Paducah Police Chief Bratton regarding Plaintiff's "Notice of Intent to file a lawsuit against the Paducah Police Department and P.O Tim Reed"; and (2) an August 11, 2008, six-page letter addressed to Commonwealth Attorney Tim Kaltenbach in Paducah regarding "Notice of Intent to File a Lawsuit Against the Commonwealth Attorneys Office," wherein he also indicates his desire "to file civil tort charges against the Paducah Police Department, County Prosecutor's office and the City of Paducah" for violation of § 1983 and the Fourth Amendment.

The facts summarized below are taken from the "Attachments" to the original complaint and from the amended complaint.  The crux of Plaintiff's claims is that he "suffered a false arrest by the Paducah Police Department based on a false, incomplete, sworn, arrest warrant."

Plaintiff states that on July 14, 2007, Defendant Beth Cluck, a post office employee, made no efforts to assist him in his request for a certified mail receipt ticket with green-card attachment and a stamped envelope, requiring another postal worker to step in and assist Plaintiff.  Plaintiff, therefore, decided to file a "good faith complaint against Cluck."

Plaintiff claims that a month later he discovered that Cluck was angry and upset over being reported to the U.S. Postal Complaint Hotline and to her supervisor.  He explains that on August 11, 2007, he entered the Avondale U.S. Post Office at about 11:55 a.m.  "Realizing the postal station was about to close at 12:00 pm, Plaintiff hastily walked passed U.S. Postal employees/clerks Cluck and her co-worker Russell McCuiston, . . . Plaintiff walked straight toward the retail service table located at the far right side wall opposite where Cluck and McCuiston were standing behind the retail service counter."  According to Plaintiff, no words were exchanged between the parties, and he began working on a legal document that he wanted to mail.  At about 11:59 a.m., McCuiston told Plaintiff to hurry up with his letter as the post office was closing at noon.  Plaintiff reports that he quickly wrapped up the highlighting of his legal document, gathered his belongings, and walked over to the service retail counter.

While McCuiston assisted Plaintiff, Cluck exited the service retail area and locked the doors.  No words were exchanged between Plaintiff and Cluck.  After Plaintiff finished his business with McCuiston, he exited the retail service area, and Cluck opened the door. McCuiston had exited toward the back area of the post office and was out of plain view of Plaintiff.  As Plaintiff walked past Cluck, she began screaming, "'If you have something to say to me, you can say it to my face!'"  Plaintiff turned toward Cluck, who "approached Plaintiff in a menacing, angry manner and said . . ., 'I heard what you called me! . . . You called me a f*****g bitch!'"  Plaintiff denied these allegations.  Cluck "pointed the keys directly at Plaintiff's face level shaking or rocking the keys directly at Plaintiff's face."  Plaintiff claims that he was "apprehensive and concerned for his physical safety to turn away from Cluck."  Plaintiff reports that Cluck then began screaming that she knew that he had filed a complaint against her and that

3

he was a "'dumb ass! . . .  a  bitch!'" or words to that effect.  "Then a loud argument erupted between Plaintiff and Cluck."  Plaintiff states that he was "visibly angry and upset at being called pejorative, profane names in a public facility, on federal property, by an active duty, U.S. Postal employee in full uniform."  Cluck then banged on the employee entrance door and yelled for McCuiston.  McCuiston appeared, and Plaintiff demanded he contact a supervisor or the Paducah Post Master.  McCuiston refused and told Plaintiff to leave the premises or he would call the police.  Cluck continued to scream "profanities and pejorative slurs towards Plaintiff" while McCuiston repeatedly told her to enter the employee entrance door, which she refused to do.

Plaintiff exited the post office and went to his car to get his cell phone.  While Plaintiff was standing between his car and the front door of the post office, Cluck went to the front door with a cell phone in her hand.  "Plaintiff angrily shouted to Cluck two times, "'You f*****g bitch!'  This was the tail end of the verbal confrontation between Cluck and Plaintiff."

Plaintiff left the property and, while driving his car, called 911 on his cell phone and reported the incident between him and Cluck.  He then drove to the Paducah Postal Annex and was told by two workers to exit the property as the police were looking for him.  Plaintiff decided to file a criminal complaint against Cluck at the Paducah Police Department.  While driving to the police department, he was pulled over by Paducah Police Officer Tim Reed.  Soon, more police officers joined Officer Reed.  Officer Reed and Sergeant D. White questioned Plaintiff about the events at the post office and advised Plaintiff that Cluck and McCuiston had told them that Plaintiff entered the post office five minutes before closing, that Plaintiff walked past them to the service retail table, and that they heard Plaintiff call Cluck "'a f*****g bitch"

4

under his breath as he walked past them towards the service retail table.  After an intense debate between Plaintiff and the officers, Plaintiff asked to file charges against Cluck for harassment and disorderly conduct.  Officer Reed asked Plaintiff if he was a law student at the law school and then told Plaintiff that he was not going to allow him to file a complaint against Cluck. Plaintiff claims that Officer Reed then stated, "I think you intentionally went there to harass her. She told us you tried to get her fired once before and she fears you'll try to threaten her again." Tensions escalated between Plaintiff and Officer Reed, and, after a heated exchange, Sergeant White told Plaintiff to go home.

Plaintiff went home but then decided to go to the police station to speak to a higher ranking official on duty, which happened to be Sergeant White, who refused Plaintiff's request to file a complaint against Cluck.

Unbeknownst to Plaintiff at the time, on August 13, 2007, Officer Reed accompanied Cluck to the McCracken County prosecutors office to seek a warrant for Plaintiff's arrest.  The warrant was signed by the Honorable Chris Hollowell on August 14, 2007.  Plaintiff reports that county prosecutor Daniel Boaz was responsible for placing the arrest warrant before Judge Hollowell "affirming or swearing under oath the false, unsupported allegations made by Beth Cluck and Russell McCuiston."  Plaintiff claims that there were no detailed statements in the "non-existing affidavit(s) detailing what specific conduct constituted menacing, other than hearsay remarks written by Sgt. D. White and/or Police Officer T. Reed based on what Ms. Cluck and Mr. McCuiston told them in their written police reports."  Plaintiff claims that "[a]t no time on 8/11/07 and prior to 8/14,07, neither P.O. Reed, nor Sgt. David White, nor any Police Supervisor, Manager, or Chief of Police, seek a written statement from [Plaintiff] Tunne . . . .

5

[or] permit Mark Tunne the right to file a cross complaint against Beth Cluck for Disorderly Conduct, Harassment, or Menacing."

On August 15, 2007, Plaintiff received a phone call from U.S. Postal Inspector Andrew Zeman, who informed Plaintiff that he was investigating a complaint made by Cluck. Zeman told Plaintiff that any complaints that he had against Cluck had to be filed with the Office of the Inspector General or the U.S. Postmaster General's Office. Plaintiff had no knowledge at the time that Cluck had procured an arrest warrant against him, and he engaged in a 57-minute conversation with Zeman telling him about his encounter with Cluck.

During the conversation, Zeman advised Plaintiff that he (Zeman) had been in direct contact with Cluck, the PPD, and the McCracken County prosecutor's office and revealed to Plaintiff that "he [Zeman] was the sole person who would decide if criminal charges would be filed against Plaintiff."

On August 17, 2007, Zeman again contacted Plaintiff, this time advising Plaintiff that he was going to register Plaintiff's name in a national database registry of violators against the U.S. Postal Service. Plaintiff threatened to file a lawsuit if Zeman entered his name in the registry without his consent and court order. Zeman then advised Plaintiff that he had authorized Cluck, the PPD, and the McCracken County prosecutor's office to effect a formal arrest against Plaintiff for harassment and disorderly conduct on U.S. Postal property. Zeman advised that he had reviewed the written statements of Cluck, McCuiston, Officer Reed and other local, postal service employees (who Plaintiff claims did not like him), and determined that Cluck was credible in her complaint against Plaintiff.

6

Later in the day on August 17, 2007, Plaintiff went to the PPD to retrieve a copy of Cluck's complaint to determine what statements she told to the police.  While there, a clerk advised Plaintiff that there was a warrant for his arrest.  Plaintiff reports that "Police Officer Norman, a white male, approached me in the service entrance area.  He read me my Miranda rights.  He then hand cuffed me and serviced me through [the] booking process into the local jail."  Plaintiff alleges that when he asked Officer Norman to see the arrest warrant, Officer Norman failed to show Plaintiff a copy or provide him with a photocopy.  He further alleges that on the arrest warrant Officer Norman fraudulently checked off that he served the arrest warrant, although Plaintiff was not served with the arrest warrant until August 18, 2007.

Plaintiff reports that the county prosecutor, Samuel Clymer, charged him with harassment and menacing.  Plaintiff alleges that on October 18, 2007, during his last "pre-conference hearing, Mr. Clymer admitted in open court that he did not specify any written statements on the sworn arrest warrant detailing any alleged actions against me, Mr. Tunne, to support 'probable cause' for Menacing under (KRS) 525.055."  Clymer amended the harassment charge to disorderly conduct and, one week before the trial, Clymer dismissed the menacing charge without explanation.  Plaintiff reports that he was acquitted of disorderly conduct on February 8, 2008, by a jury after a twelve-minute deliberation.

As relief, Plaintiff seeks compensatory, nominal, general, statutory, and punitive damages and restitution for legal fees if a lawyer is retained.

7

## II. <u>STANDARD OF REVIEW</u>

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action.  28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d at 604-05.  Upon review, this Court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  ANALYSIS

### A.  42 U.S.C. § 1983

#### 1.  Commonwealth of Kentucky and the Commonwealth's Attorney's Office

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere.  As such, it has two basic requirements:  (1) the deprivation of federal statutory or constitutional rights by (2) a *person* acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). In *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court held that "a State is not a person within the meaning of § 1983," *id.* at 64, and applied that holding to "governmental entities that are considered 'arms of the State.'"  *Id.* at 70; *Jordan v. Kentucky*,

Civil Action No. 3:09CV-424-M, 2009 WL 2163113, at *4 (W.D. Ky. July 16, 2009) (finding Commonwealth's Attorney's Office is not a "person" subject to suit under § 1983). *York v. Warren County Commonwealth Attorney's Office*, No. 1:08CV-P16-R, 2008 WL 339505, at *2 (W.D. Ky. Feb. 6, 2008) ("[T]he Warren County Commonwealth Attorney's Office is not a 'person' under the Act.").  Because neither the Commonwealth of Kentucky nor the Commonwealth's Attorney's Office is a "person" subject to suit under § 1983, the § 1983 claim must be dismissed for failure to state a claim upon which relief may be granted.

Alternatively, under the Eleventh Amendment to the U.S. Constitution,[2] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it.  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 78l, 782 (1978).  The Commonwealth of Kentucky has not waived its immunity, *Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states.  *Whittington v. Milby*, 928 F.2d 188 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332 (1979)).  Thus, the Eleventh Amendment further bars a § 1983 action against the Commonwealth of Kentucky and the Commonwealth's Attorney's Office.  *See York*, 2008 WL 339505 at *2 ("[T]he Eleventh Amendment acts as a bar to all claims for relief against the

---

[2]Under the Eleventh Amendment to the United States Constitution, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

Warren County Commonwealth Attorney's Office."); *Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at * 2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

### 2.  Paducah Police Department

The Paducah Police Department is not an entity subject to suit.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (noting that the county police department is not an entity which may be sued); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983); *Ferguson v. Dallas County Jail*, No. 3:96-CV-2939-D, 1997 WL 86459, at *1 (N.D. Tex. Feb. 26, 1997) (finding that county jail lacks separate jural existence and is not a separate entity subject to suit).  In this situation, it is the City of Paducah that is the proper defendant.  *Smallwood v. Jefferson County Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself).  Further, the City of Paducah is a "person" for purposes of § 1983.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  The claims against the Paducah Police Department must, therefore, be dismissed.

### 3.  City of Paducah and McCracken County

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The Court will address the issues in reverse order.

11

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

12

In the instant case, Plaintiff has not alleged that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm.  Rather, Plaintiff's plaint appears to be an isolated occurrence affecting only Plaintiff.  *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible.").  Nothing in the complaint demonstrates that any wrongdoing occurred as a result of a policy or custom implemented or endorsed by either the City of Paducah or McCracken County.  Accordingly, the complaint fails to establish a basis of liability against these municipalities and fails to state a cognizable § 1983 claim.

### 4.  McCracken County Prosecutor

The Supreme Court has considered in several decisions whether and to what extent a state or local prosecutor is immune from liability under 42 U.S.C. § 1983.  For example, in *Imbler v. Pachtman*, 424 U.S. 409 (1976), the court held that a prosecutor enjoys absolute immunity from section 1983 liability when he acts "as an advocate" by engaging in activities "intimately associated with the judicial phase of the criminal process."  *Id.*  at 430; *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993).

The Court in *Imbler* noted that the common law afforded absolute immunity to prosecutors for several reasons.  Immunity encourages vigorous decision making by reducing, if not eliminating, liability's inhibitory effect.  *Id.* at 424-25.  It protects prosecutors against having "to answer in court each time [a defendant] charge[s] him with wrongdoing [which diverts] his energy and attention . . . from the pressing duty of enforcing the criminal law."  *Id*. at 425.  Immunity also ensures that judges are not influenced "by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment."  *Id.* at 427.  Alternative mechanisms,

13

such as a trial judge's remedial powers, appellate review and post-conviction collateral remedies, exist to remedy injury caused by prosecutorial misconduct. *Id*. The Court concluded that "the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983." *Id*. at 424. Describing the conduct protected by immunity, the Court opined that advocatory conduct includes "initiating a prosecution" and "presenting the State's case." *Id.* at 431. The Court also recognized that distinguishing between action taken as an advocate and action taken as an administrator or even investigator might present difficult questions. *Id*. at 431 n. 33. Nevertheless, advocatory conduct is clearly protected by the absolute immunity.

In the years following *Imbler*, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, -- U.S. -- , 129 S. Ct. 855, 861 (2009) (citations omitted). It has further held that "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." *Id.* (citations omitted).

Plaintiff takes issue with the McCracken County Prosecutor's presentation of the arrest warrant to the judge and the prosecutor's decision to prosecute Plaintiff for the charged offenses. These allegations, however, clearly involve "advocatory" conduct. *See Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997) ("A prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity."). The county prosecutor is, therefore, entitled to absolute immunity from the instant action.

14

Any official capacity claim against the McCracken County Prosecutor is barred by the Eleventh Amendment and is not cognizable under § 1983. *See Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (holding that a municipal prosecutor acts as an arm of the state in prosecuting or declining to prosecute state criminal offenses); *Rogers v. Hill*, No. Civ.A. 4:05CV-35-M, 2005 WL 1287415, at *2 (W.D. Ky. May 31, 2005) ("KRS 15.700 establishes a unified prosecutorial system for the Commonwealth. KRS 15.725(2) requires a County Attorney to prosecute criminal violations in state court.").

### 5. Paducah Police Officer Tim Reed

The Court will allow the federal § 1983 Fourth Amendment claims of false arrest, false imprisonment, and malicious prosecution to proceed against Defendant Reed.

### B. 42 U.S.C. § 1985

Section 1985 contains three subsections and five broad categories of conspiratorial activity. *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). "Three of the five broad categories . . . relate to institutions and processes of the federal government--federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3)." *Id.*; *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, (6th Cir. 2006) ("Section 1985(1), which prohibits conspiracies to interfere with federal officers in the performance of their duties, and the first clause of § 1985(2), which prohibits conspiracies to influence parties, witness, or jurors in federal court proceedings, are not applicable to this case."). None of these provisions apply in this case.

As to the remaining two categories of conspiratorial activity, the second part of § 1985(2) prohibits conspiracies that interfere with the administration of justice in state court, *Kush*, 460 U.S. at 725, and the first part of § 1985(3) is concerned with "the private enjoyment of

15

'equal protection of the laws' and 'equal privileges and immunities under the laws.'" *Kush*, 460 U.S. at 724.  These two subsections contain "language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Id.* at 725.  "Claims asserted under these provisions require that the conspirators' actions be motivated by race or class-based animus," *Bennett v. Batchik*, No. 90-2036, 1991 WL 110385, at *6 (6th Cir. June 24, 1991) (citing *Kush*, 460 U.S. at 725), an allegation which is wholly devoid in the complaint.

For the foregoing reasons, Plaintiff has failed to state a conspiracy claim under § 1985.

**C.  42 U.S.C. § 1986**

A cause of action under § 1986 is based on the violation of § 1985.  *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (explaining that a "§ 1986 claim is derivative and conditioned on establishing a § 1985 violation").  As this Court has already concluded that there is no violation under § 1985, the § 1986 claim fails and must be dismissed.

**D.  *Bivens***

The *Bivens* doctrine is a judicially created counterpart to a § 1983 action and pertains to suits filed against federal officials who have allegedly denied a plaintiff's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390-97 (1971). Any *Bivens* claim against the state and municipal Defendants, therefore, fails.  As to the federal Defendants, *Bivens* actions are not cognizable against federal agencies, such as the USPS. *F.D.I.C. v. Meyer*, 510 U.S. 471, 485-86 (1994).  The Court will allow the Fourth Amendment *Bivens* claims (false arrest, false imprisonment, malicious prosecution) to proceed against the Defendants Cluck, McCuiston, and Zeman

16

**E.  Title 36 -- Parks, Forests, and Public Property**

Plaintiff alleges that at his "arraignment before Judge C. Hollowell in McCracken County District Court, Judge C. Hollowell ordered Plaintiff to stay away from the Avondale U.S. Postal station.  A known, federal, public facility."  He continues that "[a]s a result of this Order which lasted approximately 6 months, Plaintiff was unlawfully deprived of his federal rights under Title 36 to use the Avondale Post office as a matter of right due to the false statements told mainly by Cluck, but co-supported by McCuiston.  This deprivation denied Plaintiff the right to exercise his rights and discretion to use a convenient, nearly, post office to transact his U.S. postal affairs to which the Plaintiff was dependent upon."  According to Plaintiff, the order violated Title 36.

It appears that Plaintiff is referencing Title 36 of the Code of Federal Regulations, which is entitled "Parks, Forests, and Public Property."  Title 36 contains fifteen chapters regulating various aspects of the National Park Service, the Forest Service, the Corp of Engineers, the American Battle Monuments Commission, the Smithsonian Institution, the Library of Congress, the Advisory Council on Historic Preservation, the Pennsylvania Avenue Development Corporation, Presidio Trust, the Architectural and Transportation Barriers Compliance Board, the National Archives and Records Administration, the Oklahoma City National Memorial Trust, and the Morris K. Udall Scholarship and Excellence in National Environmental Policy Foundation.  Plaintiff fails to demonstrate how Judge Hollowell's order restricting him from using the Avondale Post Office violated any provision in Title 36.  Accordingly, Plaintiff's Title 36 claim must be dismissed.

17

### F.  State-law claims

The state-law claims against the federal Defendants (USPS, Cluck, and McCuiston) are

brought under the FTCA.  "Under the FTCA, the United States waives its sovereign immunity,

and grants exclusive jurisdiction for

> civil actions on claims against the United States . . . for injury or loss of property, or
> personal injury or death caused by the negligent or wrongful act or omission of any
> employee of the Government while acting within the scope of his office or
> employment, under circumstances where the United States, if a private person, would
> be liable to the claimant in accordance with the law of the place where the act or
> omission occurred.

*Mackey v. United States*, 247 F. App'x 641, 643-44 (6th Cir. 2007) (quoting 28 U.S.C. §

1346(b)(1)).

The Court will consider the state-law claims against the state and municipal Defendants

directly under state law on the basis of supplemental jurisdiction,[3] not by way of federal question

jurisdiction under the FTCA, as that Act does not apply to the state and municipal Defendants.

*Petty v. United States*, 80 F. App'x 986, 989 (6th Cir. 2003) ("As for the Detroit police officers

who entered the Petty home, their actions cannot be the basis of liability under the FTCA

because they are not federal employees.").

### 1.  Vicarious liability and respondeat superior

These doctrines are not causes of action but theories of liability which will be addressed,

if necessary, in conjunction with the other state-law claims.  *O'Bryan v. Holy See*, 556 F.3d 361,

370 n.1 (6th Cir. 2009) ("[R]espondeat superior is not a cause of action.  It is a basis for holding

---

[3]Diversity jurisdiction under 28 U.S.C. § 1332 could also serve as a basis for this Court to
review the state-law claims against the state and municipal Defendants as Plaintiff is a citizen of
New York and Defendants are citizens of Kentucky.

the [defendant] responsible for the acts of its agents.  Thus, *respondeat superior* will factor in to our discussion of the other claims advanced by plaintiffs but will not be treated separately.").

### 2.  Negligence

Plaintiff alleges that Defendants USPS and Zeman were negligent for failing to ascertain all of the facts from both Cluck and Plaintiff before assisting Cluck in filing a criminal complaint against Plaintiff and for failing to determine whether Plaintiff's claims against Cluck had any merit or whether Cluck was acting out of revenge.

"[A] negligence case . . . requires proof that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury."  *Pathways, Inc. v. Hammons*, 113 S.W. 3d 85, 88 (Ky. 2003).

A negligence claim cannot be maintained against the USPS and its employees as they have no duty to conduct an investigation before reporting a crime.  *See, e.g., Bertram v. Fed. Exp. Corp.*, Civil Action No. 05-28-C, 2008 WL 170063, at *6 (W.D. Ky. Jan. 17, 2008) (finding that creation of a duty for a company to conduct its own investigation into an alleged crime "would be contrary to the public policy that encourages the reporting of crimes in a timely manner, thus weighing against the imposition of such a duty") (citing *Ferguson v. Richards*, 271 S.W. 2d 29, 30 (Ky. 1954)).[4]

---

[4]Moreover, as the *Bertram* court further observed:

[T]he plaintiff cannot proceed with a claim for negligence where the claim is really a malicious prosecution claim.  *Hill v. Wil[l]mott*, 561 S.W.2d 331, 334 (Ky. Ct. App. 1978). The policy considerations addressed by the elements of a malicious prosecution action would be thwarted if the plaintiff were allowed to proceed on a theory of negligence.  *Id.* The plaintiff may not avoid the higher standards of malicious-prosecution claims by bringing negligence claims against the defendants under the same facts that constitute his other claims.

### 3.  Negligence *per se*

Plaintiff alleges that Defendant Reed was negligent *per se* when he failed to investigate the U.S. Postal policy regulations regarding the training and code of conduct required of U.S. Postal employees in dealing with allegedly bad conduct from members of the public; when he failed to find out if Cluck was to file a grievance with the USPS first; when he failed to review the 911 audio tape for any gross inconsistencies made by Cluck; and when he failed to review Cluck's written statement dated August 11, 2007, in connection with the 911 tape recording.

"[N]egligence *per se* is merely a negligent claim with a statutory standard of care substituted for the common law standard of care."  *Pile v. City of Brandenburg*, 215 S.W. 3d 36, 41 (Ky. 2006).  Under Ky. Rev. Stat. § 446.070,[5] relied upon by Plaintiff, "[a] person injured by the violation of *any statute* may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  § 446.070 (emphasis added).  "Kentucky courts have held that the 'any statute' language in KRS 446.070 is limited to Kentucky statutes and does not extend to federal statutes and regulations or local ordinances."  *Young*, 289 S.W. 3d at 589.

Plaintiff has failed to state a cognizable claim of negligence *per se* against Defendant Reed because he has failed to allege that Defendant Reed violated a Kentucky statute which caused his alleged damages.

---

*Bertram*, 2008 WL 170063 at *7.

[5]Section 446.070 "codifies the common-law doctrine of 'negligence *per se*.'"  *Young v. Carran*, 289 S.W. 3d 586, 589 (Ky. Ct. App. 2008).

### 4.  Slander *per se*

In the complaint, Plaintiff alleges that Beth Cluck "committed slander per se, and later perjury under oath in open court, when they falsely stated that [Plaintiff] committed the crime of Harassment and Menacing against Beth Cluck to police officers, county prosecutors, and to a jury in open court in violation of federal and state law."  He also alleges that Officer Reed committed slander *per se* "when he submitted a false, incomplete, Criminal Complaint Report and drafted an Arrest Warrant accusing [Plaintiff] of intentionally committing the crime of Harassment and Menacing against Beth Cluck as stated to other police officers, county prosecutor, Sam Clymer, Judge C. Hollowell, and ultimately to a jury in open court in violation of federal and state law."

The Court is without jurisdiction to consider the slander claim against federal Defendant Cluck.  "[T]he FTCA excepts certain torts from this waiver of sovereign immunity, including libel and slander."  *Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2002) (citing 28 U.S.C. § 2680(h)).[6]

---

[6]Under 28 U.S.C. § 2680(h), "The provisions of this chapter and section 1346(b) of this title shall not apply to--

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: Provided, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

The Court will, however, allow the slander *per se* claim to go forward against Defendant Reed.  *See Pennington v. Dollar Tree Stores, Inc.*, 28 F. App'x 482, 489 (6th Cir. 2002) ("Falsely imputing criminal acts to another is slanderous *per se*.") (citing *Columbia Sussex Corp. v. Hay*, 627 S.W. 2d 270, 274 (Ky. Ct. App. 1981)); *see also White v. Ashland Park Neighborhood Ass'n, Inc.*, No. 2008-CA-001303-MR, 2009 WL 1974750, at *8-9 (Ky. Ct. App. July 10, 2009) ("[D]efamatory statements made during judicial and legislative proceedings are subject to absolute protection only if those statements are pertinent and relevant to those proceedings.").

### 5.  Intentional infliction of emotional distress

In *Craft v. Rice*, 671 S.W. 2d 247 (Ky. 1984), the Kentucky Supreme Court recognized the tort of intentional infliction of emotional distress arising from extreme and outrageous conduct and adopted the definition of the tort of outrageous conduct as set forth in the *Restatement (Second) of Torts* § 46, which provides, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  *See Craft*, 671 S.W. 2d at 251.  Under Comment d of § 46 of the Restatement,

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.  *Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . .

22

*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 805-06 (6th Cir. 1994) (quoting Comment d to § 46 of the Restatement) (emphasis in *Pierce*).  "Kentucky courts have explicitly adopted this definition."  *Id.* at 806 (citing *Craft*, 671 S.W. 2d at 250 and *Humana of Ky., Inc. v. Seitz*, 796 S.W. 2d 1, 3 (Ky. 1990)).

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements:

> 1) the wrongdoer's conduct must be intentional or reckless;
> 2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> 3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and
> 4) the emotional distress must be severe.

*Seitz*, 796 S.W. 2d at 2-3.  The tort of intentional infliction of emotional distress "is not available for 'petty insults, unkind words and minor indignities.'  Nor is it to compensate for behavior that is 'cold, callous and lacking sensitivity.'  Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees."  *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000) (quoting *Kroger Company v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996) and *Seitz*, 796 S.W. 2d at 4).  "Kentucky . . . takes a restrictive/limited approach to this tort."  *Sacharnoski v. Capital Consol., Inc.*, 187 F. Supp. 2d 843, 845 (W.D. Ky. 2002) ("Maintaining this restrictive view, Kentucky courts have routinely granted summary judgment in favor of the defendant."); *see, e.g., Allen v. Clemons*, 920 S.W. 2d 884 (Ky. Ct. App. 1996) (holding that the defendant's conduct of placing a sign in his yard, reading "Danger–Child Molester in the Community," was not sufficient conduct to sustain a claim for intentional infliction of emotional distress.); *Seitz*, 796 S.W. 2d 1 (finding no outrageous conduct when

nurses told the plaintiff, who had given birth to a stillborn baby, to "shut up" and that they would dispose of the baby right there at the hospital).

In the instant case, Plaintiff has not alleged facts sufficient to suggest that the alleged wrongdoing occurred with the intent to cause extreme emotional distress.  The Court simply cannot find that any of the behavior alleged by Plaintiff was "truly outrageous, intolerable and . . . results in bringing one to his knees."  *Osborne*, 31 S.W.3d at 914.  That state-law claim must, therefore, be dismissed.

### 6.  Negligent infliction of emotional distress

Plaintiff claims that he suffered and continues to suffer emotional distress, including personal suffering and grief, anguish, anxiety, and fright based on the allegations in the complaint and amended complaint.  According to Plaintiff, "[e]ach defendant showed complete apathy and indifference for intentionally inflicting negligent emotional distress upon the Plaintiff when they new, or should have known, they effected an invalid arrest, leading to false arrest, jail confinement alleged in the complaint."

"It is well established in this jurisdiction that 'an action will not lie for fright, shock or mental anguish which is unaccompanied by physical contact or injury. . . .'"  *Deutsch v. Shein*, 597 S.W. 2d 141, 145-46 (Ky. 1980) (quoting *Morgan v. Hightower's Adm'r*, 163 S.W. 2d 21, 22 (1942)).  "[T]he amount of physical contact or injury that must be shown is minimal."  *Id.* at 146.  "Contact, however, slight, trifling, or trivial, will support a cause of action."  *Id.* "However, it is necessary that the damages for mental distress sought to be recovered be related to, and the direct and natural result of, the physical contact or injury sustained."  *Id.*

Plaintiff does not complain of any physical contact or injury, slight or otherwise, which would support his claim for mental suffering.  Accordingly, his claim of negligent infliction of emotional distress will be dismissed.

### 7.  **False arrest**, **false imprisonment, abuse of process, and malicious prosecution**

Upon initial review, the Court will allow these state-law claims to proceed against the federal Defendants and state Defendant Reed.

### IV.  <u>CONCLUSION</u>

Upon initial review of the complaint and amended complaint, the Court will allow the following claims to proceed:  the § 1983 Fourth Amendment claims of false arrest, false imprisonment, and malicious prosecution against Defendant Reed; the Fourth Amendment *Bivens* claims (false arrest, false imprisonment, and malicious prosecution) against Defendants Cluck, McCuiston, and Zeman; the state-law claims of false arrest, false imprisonment, abuse of process, and malicious prosecution against Defendants USPS, Cluck, McCuiston, Zeman, and Reed; and the state-law claim of slander *per se* against Defendant Reed.  All other claims will be dismissed.

The Court will entered separate Orders consistent with this Memorandum Opinion.

Date:

cc:   Plaintiff, *pro se*
       Defendants
       Attorney for City of Paducah
       McCracken County Attorney
       U.S. Attorney
4413.005