# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**CIVIL ACTION NO. 5:08-CV-00188-JHM**

**MARK TUNNE**                                                    **PLAINTIFF**

**V.**

**PADUCAH POLICE DEPT., et al.**                                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants United States, United States Postal Service (U.S.P.S.), Beth Cluck, Russell McCuiston, and Andrew Zeman's Motion to Dismiss, or in the alternative, for Summary Judgment [DN 54] and Plaintiff Mark Tunne's Cross Motion for Summary Judgment [DN 70]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendants' motion is **GRANTED** and the Plaintiff's motion is **DENIED**.

## I. STANDARD OF REVIEW

Defendants have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. Attached to their motion, Defendants submitted affidavits and evidence outside of the pleadings. Plaintiff's sixty-eight page response addresses both the motion to dismiss standard and the motion for summary judgment standard. Furthermore, Plaintiff attached evidence outside of the pleadings to his response.

Fed. R. Civ. P. 12(d) states:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Based on this rule, the Court may treat a motion to dismiss as a motion for summary judgment and decide the motion pursuant to Rule 56, unless the Court decides to exclude the affidavits. <u>Cincinnati</u>

Ins. Co. v. Hertz Corp., 776 F. Supp. 1235, 1238 (S.D. Ohio 1991); Rebel Motor Freight, Inc. v. Freeman Drywall Co., 914 F. Supp. 1516, 1520 (W.D. Tenn. 1994).  Considering both sides had notice and an opportunity to present all pertinent material, and both sides did in fact attach evidence outside the pleadings, the Court will convert this motion to one for summary judgment. Furthermore, Plaintiff has filed his own motion for summary judgment, to which Defendants have responded.  Therefore, the Court will address these two motions as cross motions for summary judgment.

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving

party]."  <u>Anderson</u>, 477 U.S. at 252.

## II. BACKGROUND

This suit stems from an altercation which occurred on Saturday, August 11, 2007, between Plaintiff Mark Tunne and Defendant Beth Cluck at the Avondale station post office, where Cluck works.  Plaintiff had a previous encounter with Defendant Cluck at the post office when, according to Plaintiff, she failed to help him and instead gave "Tunne the 'silent treatment' with a rude, discourteous, eye stare, along with no attempts of customer service assistance."  Pl. Resp. 4.

On Saturday, August 11, 2007, Plaintiff entered the Avondale station post office at approximately 11:55 a.m.  Plaintiff hurried through the lobby and past Defendants Cluck and McCuiston to a service table to finish highlighting certain legal documents before he placed them in the mail.  Defendant Cluck maintains that as Plaintiff passed her he whispered under his breath, "fucking bitch."  Defendant McCuiston has given mixed testimony on this issue, but in his initial statement to police he claimed that he heard Plaintiff whisper something, but was unsure of what it was.  Plaintiff finished his work and then placed the documents in the mail and purchased a stamp from Defendant McCuiston.  Because the post office closed at 12:00 p.m., Defendant Cluck was in the process of locking the service retail area doors as the Plaintiff was passing her to exit.  As Plaintiff exited the retail service area, Defendant Cluck yelled to the Plaintiff that if he had something to say to her that he should say it to her face.  Plaintiff contends in his response that Defendant Cluck approached him yelling and screaming profanity and shaking her keys at his face.  However, in a letter written by Plaintiff immediately after the altercation, Plaintiff admits that after Cluck yelled at him to speak to her face that "[he] walked back to Ms. Cluck as [sic] yelled back at her . . . 'I didn't say a fucking word to you! What is your problem! Why can't you leave me alone!'"

Def. Mot. to Dismiss Ex. 5 at 2. One thing is clear, both sides admit that heated words were exchanged. Pls. Resp. 14.

According to Defendant Cluck, it was at this point that she sought assistance from Defendant McCuiston by tapping on the glass in the service retail area. When Defendant McCuiston arrived, Defendant Cluck retreated back behind the employee door. Defendants Cluck and McCuiston contend that Plaintiff tried to force his way through the employee door by banging on the door, causing documented damage. Defendant McCuiston told Plaintiff that he needed to exit the premises and that he and Cluck were calling the police. Plaintiff exited the building and got into his car but did not leave the parking lot. Defendant Cluck called 911 and began speaking with an operator. In an attempt to give the operator the Plaintiff's license plate number, Defendant Cluck exited the employee door and looked out into the parking lot. As she stood in the hallway looking at Plaintiff's car, Plaintiff exited the car and re-entered the post office screaming "fucking bitch." Defendant Cluck again retreated through the employee door and Plaintiff again attempted to enter, but was unsuccessful.

Plaintiff contends that he never attempted to enter the employee entrance door and that any damage to the door was caused by Defendant Cluck banging on it for McCuiston's help. Plaintiff contends that he and Cluck yelled at each other until McCuiston appeared, at which time Cluck reluctantly exited through the employee door. According to Plaintiff, Defendant McCuiston told him that the police were being called so he should exit the premises. Plaintiff exited the building and sat in his car for a moment, until he saw Cluck on the phone looking at his car through the glass. At this point, Plaintiff admits that he got out of his car and screamed "fucking bitch," but he claims that he never re-entered the post office.

All parties are in agreement that shortly after exiting his car and yelling, the Plaintiff got back into his car and left the post office. Defendant Cluck had given the 911 operator a description of Plaintiff's car, his license plate number, and a summary of his actions. Plaintiff drove to the annex postal department in Paducah and was told by the supervisor on duty that the police were looking for him in connection with the incident at the Avondale station. Plaintiff left the annex and began driving to the Paducah police station when Officer T. Reed and Sergeant D. White stopped Plaintiff in connection with the 911 call. After discussing the incident with the officers, Plaintiff was informed that a criminal complaint was being filed against him, but that Plaintiff would not be arrested at that time.

On August 14, 2007, Officer Reed signed an affidavit in support of an arrest warrant for Plaintiff on charges of menacing and harassment. A McCracken County District Court Judge signed the warrant on the same day. On August 15, 2007, Defendant Zeman was notified of the incident at the Avondale station by Connie Dulworth, the U.S.P.S. Consumer Affairs clerk. Defendant Zeman is a U.S. Postal Inspector tasked with the security of postal facilities and the investigation of employee assaults and threats. Defendant Zeman contacted Plaintiff to discuss the incident at the Avondale station. Defendant Zeman identified himself as a federal law enforcement officer and then asked Plaintiff to explain what happened. Defendant Zeman spoke with Plaintiff for approximately fifty-seven minutes. At the end of this conversation, Defendant Zeman told Plaintiff that he would be contacting Cluck, McCuiston, the Paducah Postmaster, and the Paducah Police Department to hear their sides of the story.

After his call with Plaintiff, Defendant Zeman contacted Captain Krueger of the Paducah Police Department. Captain Krueger indicated that his department had already secured an arrest

warrant for Plaintiff based on its own investigation. Defendant Zeman requested that a copy of the arrest warrant be faxed to him for his own investigation. A copy of the warrant was eventually faxed to him on September 5, 2007. Plaintiff contends that Defendant Zeman had already contacted Captain Krueger on the morning of August 15, 2007, prior to call Plaintiff, and knew of the investigation and arrest warrant of Plaintiff.

Defendant Zeman contacted Plaintiff again on August 17, 2007. The content of their conversation is disputed. Defendant Zeman contends that he informed Plaintiff of the active arrest warrant and advised him to turn himself into the Paducah Police Department. Plaintiff contends he was never told this. Regardless of what was said, Plaintiff went to the Paducah Police Department that same day and requested a copy of Defendant Cluck's criminal complaint. While he waited for a copy of the complaint, the arrest warrant was served and Plaintiff was arrested. Plaintiff posted bail that same day.

Although originally charged with menacing and harassment, the McCracken County prosecutor tried Plaintiff on a single count of disorderly conduct on February 8, 2008. Plaintiff was acquitted of the charge. This lawsuit followed and was filed pro se on November 24, 2008. It proceeded to initial screening and after some delay, many of the claims were dismissed. The claims that survived initial screening are the state law tort claims of false arrest, false imprisonment, abuse of process, and malicious prosecution against Defendants U.S.P.S., Cluck, McCuiston, and Zeman as well the Fourth Amendment <u>Bivens</u> claims of false arrest, false imprisonment, and malicious prosecution against Cluck, McCuiston, and Zeman. Defendants have now filed a motion to dismiss or, in the alternative, for summary judgment.

# III. DISCUSSION

## A. State Law Tort Claims

The Plaintiff's state law tort claims of false arrest, false imprisonment, abuse of process, and malicious prosecution fall under the FTCA, 28 U.S.C. §§ 1346(b), 2671-80. The FTCA outlines the United States' waiver of its sovereign immunity regarding the tortious conduct of its agencies, officers, and employees. Under the FTCA,

> [t]he remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, . . . resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . . Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee . . . is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1). On January 1, 2011, the Court granted the substitution of the United States as a party for Defendants Cluck, McCuiston, and Zeman as to the state law tort claims, pursuant to the Westfall Act. Furthermore, "an FTCA claim brought against the United States Postal Service is properly treated as [one] brought against the United States." Rowser v. United States Postal Serv., 81 F.3d 161, at *2 (6th Cir. 1996) (Table) (citing Anderson v. United States Postal Serv. 761 F.2d 527, 528 (9th Cir. 1985) (per curiam)).

The FTCA does not allow claims for the intentional torts of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, unless those acts or omissions are committed by investigative or law enforcement officers of the United States. 28 U.S.C. § 2680(h). Investigative or law enforcement officer is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Id.

7

Defendants Cluck and McCuiston are U.S.P.S. clerks and have no power to execute searches, to seize evidence, or to make arrests. Therefore, the United States has not waived its sovereign immunity for the intentional torts committed by these Defendants. However, Defendant Zeman is a federal law enforcement officer with the power to execute searches, to seize evidence, and to make arrests. Therefore, the United States has potential liability under the FTCA for the actions of Defendant Zeman and the Court will analyze Plaintiff's claims as they relate to him.

Plaintiff's first claim is that Defendant Zeman is liable for false arrest and false imprisonment. "Although both the terms 'false arrest' and 'false imprisonment' are used in Kentucky case law, the Kentucky Supreme Court has determined that it considers the two to be different names for the same basic tort and that the proper name for the tort is 'false imprisonment.'" Brewer v. Rogers, 2009 WL 2242389, at *1 (E.D. Ky. 2009) (citing Dunn v. Felty, 226 S.W.3d 68, 71 (Ky. 2007)). The undisputed facts demonstrate that the arrest warrant for Plaintiff was issued on August 14, 2007, and was served by the Paducah Police Department on August 17, 2007. Defendant Zeman was not involved with this case and did not contact Plaintiff until August 15. Even if Plaintiff's version of the events is to be believed, and Defendant Zeman did contact Captain Krueger first, that does not change the fact that the warrant had already been issued prior to Zeman talking with the Paducah police. Nothing that Defendant Zeman said or did could have influenced the issuance of the arrest warrant. It is not alleged that Zeman personally executed the warrant. Because Defendant Zeman had nothing to do with the Plaintiff's arrest, there is no liability under the FTCA for his actions. See e.g. Ajami v. City of Dearborn, 2010 WL 2992412, at *8 (E.D. Mich. 2010) (granting officers motion for summary judgment on claims of false arrest, false imprisonment, and malicious prosecution where there was no evidence that officers actions "contributed to the state

court's probable cause determination").

Plaintiff also claims that Defendant Zeman committed the tort of abuse of process. Abuse of process is "the irregular or wrongful employment of a judicial proceeding." Stoll Oil Ref. v. Pierce, 337 S.W.2d 263, 266 (Ky. 1960). A claim of abuse of process requires that the plaintiff show an ulterior purpose or motive and a willful act in the use of the process not proper in the regular conduct of the proceeding. Simpson v. Laytart, 962 S.W.2d 392, 394 (Ky. 1998). Plaintiff has shown neither of these in relation to Defendant Zeman. Defendant Zeman was not involved with securing the arrest warrant, executing the arrest warrant, or bringing the charges in state court. Plaintiff has not demonstrated any motive or willful act on Defendant Zeman's behalf that brought about the criminal charge and trial of Plaintiff.

The final state law tort claim Plaintiff alleges against Defendant Zeman is malicious prosecution. There are six elements necessary for a malicious prosecution claim under Kentucky state law: (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings; (2) by, or at the instance, of the person sought to be charged; (3) the termination of such proceedings in the plaintiff's favor; (4) malice in the institution of such proceeding; (5) want or lack of probable cause for the proceeding; and (6) the suffering of damage as a result of the proceeding. Hamilton v. McKenzie, 2010 WL 4669066, at *2 (Ky. Ct. App. 2010) (citing Raine v. Drasin, 621 S.W.2d 895, 899 (Ky. 1981)). As discussed above, Plaintiff has failed to produce evidence that his arrest and trial was brought about by or at the instance of Defendant Zeman. Nor has Plaintiff shown any malice, on the part of Defendant Zeman, in the institution of his charges. Finding no genuine disputes of material fact regarding Plaintiff's state law tort claims against Defendant Zeman, summary judgment in favor of Defendant

United States on all of Plaintiff's FTCA claims is granted and Plaintiff's motion for summary judgment is denied.

**B. False Arrest and Malicious Prosecution <u>Bivens</u> claims**

Plaintiff has also alleged individual <u>Bivens</u> claims against Defendants Cluck, McCuiston, and Zeman. <u>Bivens</u> created a private right of action for damages against officials, acting under color of federal law, who are alleged to have violated a citizen's constitutional rights. <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971); <u>Corr. Servs Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001). "The <u>Bivens</u> doctrine serves as the counterpart to suits under 42 U.S.C. § 1983, and the decisional law developed under § 1983 generally applies to <u>Bivens</u>-type actions." <u>Gooding v. United States</u>, 2010 WL 925793, at *4 (E.D. Tenn. 2010) (citing <u>Carlson v. Green</u>, 446 U.S. 14, 21-22 (1980); <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978)).

Plaintiff claims that Defendants Cluck, McCuiston and Zeman violated his Fourth Amendment rights when they caused him to suffer "false arrest by the Paducah Police Department based on a false, incomplete, sworn, arrest warrant." He claims his Fourth Amendment rights were further violated when he was maliciously prosecuted for disorderly conduct. The Defendants contend that the Plaintiff has failed to state a valid constitutional claim.

Federal false arrest and malicious prosecution claims require the Plaintiff to demonstrate an absence of probable cause. <u>Voyticky v. Village of Timberlake, Ohio</u>, 412 F.3d 669, 677 (6th Cir. 2005); <u>Sykes v. Anderson</u>, 625 F.3d 294, 308 (6th Cir. 2010). "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" <u>United States v. McClain</u>, 444 F.3d 556, 562 (6th Cir. 2005) (quoting <u>United States v. Ferguson</u>, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)). An arrest made pursuant to a facially valid

warrant is usually a complete defense to a constitutional claim for false arrest unless evidence exists that a defendant has intentionally or knowingly provided misleading information or omitted information that is critical to the finding of probable cause. <u>Voyticky</u>, 412 F.3d at 677 n.4. The same standard applies to a claim of malicious prosecution. When an affidavit in support of an arrest warrant contains false statements or omits material information, that portion of the affidavit is set aside or the omitted information is included and the Court must determine whether the affidavit is still sufficient to establish probable cause. <u>Hill v. McIntyre</u>, 884 F.2d 271, 275 (6th Cir. 1989).

Defendants argue that Plaintiff must show a lack of probable cause to survive on his false arrest and malicious prosecution claims and that he has failed to so. Drawing all reasonable inferences in favor of Plaintiff, the facts demonstrate that Defendant Cluck lied about the events that transpired in the lobby of the Avondale station. He alleges that he did not run toward Defendant Cluck, but that she ran toward him screaming and cursing. However, Plaintiff does admit that he yelled and cursed at Defendant Cluck during the altercation. Defendants claim that Zeman's affidavit, Cluck's statement and McCuiston's statement present sufficient probable cause for Plaintiff's arrest. However, the original determination of probable cause was not made using all of those materials, rather the application for the arrest warrant only contained the short affidavit of Officer Reed. Officer Reed's affidavit states that Plaintiff "committed the offense of KRS 508.050, Menacing, when he intentionally did place [Cluck] in reasonable fear of imminent physical injury by running up to her and without touching her, began yelling and cussing at her." This statement creates sufficient probable cause for an arrest.

When the Court sets aside the allegedly false statement made by Cluck and used by Officer Reed, namely that Plaintiff ran at her, the Court is left with a statement that Plaintiff yelled and

cussed at Defendant Cluck. While this statement may not create sufficient probable cause for the crime of menacing, it certainly creates enough probable cause for an arrest on the charges of disorderly conduct, the charge upon which Plaintiff was eventually tried. The Sixth Circuit has "held that where no probable cause exists to arrest a plaintiff for a particular crime, but that probable cause exists to arrest that plaintiff for a related offense, the plaintiff cannot prevail in a suit alleging wrongful arrest brought pursuant to 42 U.S.C. §1983." Voyticky, 412 F.3d at 676.

Both the false arrest and the malicious prosecution Bivens claims require that Plaintiff demonstrate a lack of probable cause, and Defendants have demonstrated that even without the allegedly false statements that sufficient probable cause existed for Plaintiff's arrest and prosecution on the charge of disorderly conduct. As there is no genuine dispute of material fact regarding the presence of probable cause, Defendants' motion for summary judgment on the Bivens claims is granted and Plaintiff's motion for summary judgment is denied.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants United States, United States Postal Service, Beth Cluck, Russell McCuiston, and Andrew Zeman's Motion to Dismiss, or in the alternative, for Summary Judgment [DN 54] is **GRANTED** as to all of Plaintiff Mark Tunne's claims, and that Plaintiff Mark Tunne's cross Motion for Summary Judgment is, therefore, **DENIED**.

cc: counsel of record
Mark Tunne, pro se